# STATE OF CONNECTICUT *v.* LUIS FERNANDO LOPEZ
## (AC 22637)

Flynn, Bishop and West, Js.

(*One judge dissenting*)

Argued February 10—officially released December 9, 2003

*William M. Bloss*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Jason Germain*, assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Luis Fernando Lopez, appeals from the judgment of conviction, rendered after a jury trial, of three counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[1] On appeal, the defendant claims that (1) the trial court should have conducted an inquiry on the record and in his presence into whether a conflict of interest existed between him and his attorney, (2) the court improperly failed to conclude that defense counsel was burdened by an actual conflict of interest, (3) the court should have granted him a new trial on the ground that the verdict was inconsistent, and (4) the prosecutor's comments during closing argument were improper and amounted to misconduct sufficient to warrant a new

---

[1] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

Conviction of a class B felony subjects an individual to a possible fine not to exceed $15,000; General Statutes § 53a-41; and possible imprisonment for a term not less than one year nor more than twenty years. General Statutes § 53a-35a (5).

trial. We agree with the defendant's first claim and, accordingly, reverse the judgment of conviction and remand the case for a new trial. Because our resolution of that claim disposes of the defendant's appeal, we need not address the remaining claims.

The following facts are relevant to our disposition of the issues raised on appeal. In March, 1999, the victim[2] and her mother moved into the defendant's home. The defendant and the victim's mother were romantically involved at that time. The defendant and the victim's mother shared one bedroom while the victim slept in a separate bedroom. The defendant used the victim's bedroom as his business office and kept his computer there.

The victim alleged that soon after she moved into the defendant's home, he began molesting her by touching her inappropriately. The victim claimed that this behavior occurred frequently, and she provided descriptions of three such incidents. The first such alleged incident occurred in March, 1999, when the victim had gone to her bedroom, where the defendant was working on the computer, to ask for assistance with her homework. After the defendant declined to help her, the victim went to her bed to work on her assignment. She alleged that the defendant then went to the bed, pinned her arms over her head and rubbed her groin with his free hand. That alleged touching occurred over the victim's clothing. The second occurrence was in April, 1999. At that time, the defendant approached the victim while she was sitting on her bed. He allegedly kissed the victim on the face and again rubbed her groin over her clothing. The third alleged incident also occurred in April, 1999. The victim claimed that the defendant

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

had approached her while she was standing in her bedroom and "touched [her] in the corner."

The alleged molestation came to light when the victim disclosed it to several friends during a school field trip. A teacher's aide overheard the victim's conversation and confronted her with the information. The victim confirmed the allegations, but requested that the aide not tell anyone else. The aide, nevertheless, notified the victim's teacher and the school principal. The principal then notified the victim's mother and the department of children and families.

A worker from the department of children and families interviewed the victim. During the interview, the victim repeated her allegations of abuse. The defendant subsequently was arrested and charged with three counts each of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), sexual assault in the third degree in violation of § 53a-72a (a) (1) (B) and risk of injury to a child in violation of § 53-21 (2). Following a jury trial, the defendant was acquitted of all of the sexual assault charges and convicted of each of the risk of injury charges. Additional facts will be set forth as necessary.

I

We first address the defendant's challenge to the adequacy of the court's inquiry into a possible conflict of interest between himself and defense counsel. We agree with the defendant that the inquiry was inadequate.

The following additional facts are relevant to the defendant's claim. The victim made certain statements that were inculpatory as to the defendant and that were the basis for the state's bringing the charges of which he was convicted. Prior to trial, however, the victim wrote and signed a statement recanting her previous accusations against the defendant. The victim testified

that she did so at the insistence of her mother and the defendant. She further testified that the defendant dictated the statement to her and that she was angry that she was forced to write the statement because it was untrue.

After the victim had written a statement recanting her accusations, the victim's mother and the defendant brought her to the office of the defendant's trial counsel, attorney Christopher W. Boylan. The victim later testified that she had had a private conversation with Boylan, during which she told him that her handwritten statement was the truth. The victim's statement was then typed on stationery bearing Boylan's letterhead. The victim signed the typewritten statement, and Boylan acknowledged the statement as an officer of the Superior Court. At trial, she testified that she had been forced to make the statements, which were not true.

"Before reviewing the defendant's claim, we underscore that our review is of the actions of the trial court, not of the actions of defense counsel. Almost without exception, we have required that a claim of ineffective assistance of counsel . . . be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, rather than by those of his counsel. . . . We have addressed such claims, moreover, only whe[n] the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development. . . . Our analysis, therefore, is restricted to the actions of the trial court . . . ." (Internal quotation marks omit-

ted.) *State* v. *Drakeford*, 261 Conn. 420, 428, 802 A.2d 844 (2002).

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to [the] effective assistance of counsel. . . . Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest." (Internal quotation marks omitted.) *State* v. *Cator*, 256 Conn. 785, 793, 781 A.2d 285 (2001), quoting *State* v. *Crespo*, 246 Conn. 665, 685, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). "To safeguard a criminal defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial [court] in a timely manner. See *Holloway* v. *Arkansas*, [435 U.S. 475, 485–86, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)]; *Festo* v. *Luckart*, [191 Conn. 622, 627, 469 A.2d 1181 (1983)]." (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 389, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). "To be meaningful, an inquiry must be thorough and searching." *Festo* v. *Luckart*, supra, 628.

"There are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . ." (Internal quotation marks omitted.) *State* v. *Cator*, supra, 256 Conn. 793–94; quoting *State* v. *Crespo*, supra, 246 Conn. 686. In discharging that duty, however, "the trial court must be able, and be freely permitted, to rely upon [defense] counsel's representation that the possibility of such a conflict does or does

not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court. . . . The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case." (Citations omitted; internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 82, 513 A.2d 116 (1986).

The first mention of any alleged conflict of interest on the part of defense counsel is found in the defendant's motion for a new trial and for a judgment of acquittal, filed on June 11, 2001.[3] In that motion, the defendant claimed that he "was deprived of representation of conflict-free counsel at the trial, in light [of] defense counsel [putting] himself in the position of being a material defense witness . . . ." In its memorandum of decision denying the defendant's motion, filed October 30, 2001, the court memorialized the events forming the basis of the present claim.[4] The court recounted that "[t]he state informed the court, outside of the defendant's presence and off the record, that the defense counsel may intend to testify at trial. The trial judge in chambers asked defense counsel if he intended to testify and whether a new attorney should be obtained to represent the defendant. After consideration by defense counsel, he informed the judge that he did not intend to testify on behalf of the defendant."

On the basis of that record, it is clear that the possibility of a conflict of interest was sufficiently apparent to impose on the court a duty to inquire further. As the

---

[3] William M. Bloss, who is now the defendant's appellate counsel, filed that motion in lieu of Boylan.

[4] Although the inquiry into the possibility that defense counsel had a conflict of interest was conducted in chambers and off the record, we have no reason to doubt that it proceeded as represented by the court. Even if we accept that premise, however, the inquiry fails to satisfy the basic required elements. Most importantly, the inquiry did not provide the necessary information from which the court reasonably could conclude that there was no conflict in the defendant's attorney continuing his representation.

court's account makes clear, however, all that was established was that counsel did not plan to testify. Under no possible interpretation of the facts presented on the record can the court's inquiry be described as "thorough and searching." *Festo* v. *Luckart*, supra, 191 Conn. 628. There is nothing in the record to indicate that the court inquired into the specific contours of the alleged conflict of interest.[5] The court merely stated that it was informed that defense counsel might be planning to testify. There is no indication that the court inquired into the specific matters about which that anticipated testimony was concerned. There is also no indication that the court satisfied itself that the underlying circumstance prompting the state's inquiry regarding the possibility that defense counsel would testify did not, in fact, present at least a potential conflict. The prosecution's disclosure that defense counsel could be a potential witness in the case should have alerted the court, at a minimum, to the possibility that a conflict might exist regardless of whether defense counsel actually testified. Far from establishing that the attorney was not burdened by a conflict, the court's inquiry involved only how that potential conflict was going to be addressed.

We recognize that "[a]bsent any reason to the contrary, the trial court may rely on the defendant's attorney's representation that there is no conflict, and it has no obligation to conduct any further inquiry into the subject." *State* v. *Cator*, supra, 256 Conn. 795. In the present case, however, counsel did not assert that there was no conflict. He also did not assert that his representation of the defendant would not be compromised at trial. Defense counsel merely stated that he would not testify. Because the defendant was not present during

[5] We note that because the colloquy between the court and defense counsel was conducted off the record, we are necessarily at a disadvantage as to the details of what occurred.

that inquiry, we cannot conclude that he consented to waiving a claim of conflict.

The victim's credibility obviously was an important issue in the case. The jury was presented with physical evidence that the victim had recanted her accusations against the defendant. The victim testified that the exculpatory statement was not true and that it was not the product of her free will. Nevertheless, the victim also testified that her parents had brought her to Boylan's office and that she met alone with Boylan to discuss her recantation. She testified that Boylan had asked her if her statement recanting the allegations against the defendant was truthful, and she had responded that the statement was truthful. After assuring the defendant's attorney that the statement was true, the victim had signed a typewritten copy of that statement in the attorney's office. At no point during her testimony did she indicate that Boylan had coerced her in any way into signing the statement.

In light of the victim's testimony that she was coerced by her mother and the defendant into falsely recanting her accusations, testimonial evidence of her demeanor while at Boylan's office may have been potentially beneficial to the defendant. Given the substance of the victim's testimony, however, it also may have been a wise trial strategy to leave well enough alone and leave the jury with the image of the victim freely affirming to Boylan the truthfulness of her recantation, outside of the presence of the defendant and her mother.

Nevertheless, we are persuaded that the circumstances of Boylan's involvement present a situation in which the actual conflict of interest is clear. Boylan was a witness to a writing about which there was much testimony. Notwithstanding the strategic merits of counsel's testifying, we are concerned that the testimony regarding defense counsel's role in securing and

witnessing the victim's statement may have affected his credibility with the jury. Even in the absence of allegations of wrongdoing on his part, the jury could view defense counsel as the defendant's accomplice in securing the victim's statement.

As the United States Supreme Court has stated in the context of joint representation of multiple defendants, such representation "is [inherently] suspect because of what it tends to prevent the attorney from doing. . . . [A] rule requiring a defendant to show that a conflict of interests . . . prejudiced him in some specific fashion would not be susceptible of intelligent, even-handed application. . . . [I]n a case of joint representation of conflicting interests the evil . . . is in what the advocate finds himself compelled to *refrain* from doing . . . . It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available *it would be difficult to judge intelligently the impact of the conflict on the attorney's representation of a client.* And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions . . . would be virtually impossible." (Citations omitted; emphasis added.) *Holloway* v. *Arkansas*, supra, 435 U.S. 489–91.

The problems posed by the conflicted representation in the present case pose the same difficulties as those involved in cases of joint representation of multiple criminal defendants, as set forth in *Holloway*. It is impossible to determine what role defense counsel's involvement in securing the victim's recantation played in the making of strategic choices during trial. His involvement may have weighed particularly with respect to his decision not to testify as a material witness regarding the victim's demeanor while preparing her statement and the lack of vigorous cross-examina-

tion on that issue. It is also impossible to determine what Boylan's testimony would have been had he chosen to testify. Thus, to require the defendant to show an actual adverse consequence resulting from the conflicted representation would saddle him with an insurmountable obstacle to securing relief. See id., 490–91.

Because the defendant raised the issue of the extent to which the United State Supreme Court abandoned the automatic reversal rule in *Mickens* v. *Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), and the impact of any such change on the law of our jurisdiction, we briefly discuss the applicability of *Mickens* to the present case. *Mickens* is both substantively and factually distinguishable from the present case. In the first instance, *Mickens* was a habeas case that necessarily focused on the adequacy of defense counsel's representation at trial. As we stated previously, the focus of our review in the present case is not the adequacy of counsel's representation during trial, but rather the adequacy of the court's response to defense counsel's conflict of interest when that conflict was brought to the court's attention.[6] Moreover, the trial court in *Mickens* was not aware of trial counsel's conflict of interest, nor did it have any reason to be aware of such conflict. Id., 165. That conflict was discovered by the defendant's habeas counsel only after the trial. Id. Thus, *Mickens* did not involve a situation in which the court's duty of inquiry had been triggered.

To the extent that the court in *Mickens* nevertheless discussed the automatic reversal rule as framed by *Hol-*

---

[6] We recognize that our Supreme Court has discussed *Mickens* in the context of a direct appeal challenging the adequacy of a trial court's conflict of interest inquiry. See *State* v. *Parrott*, 262 Conn. 276, 282, 811 A.2d 705 (2003). The court's holding in *Parrott*, however, was based on the finding that the trial court's inquiry into the potential conflict was adequate. Id., 289. Thus, the court never reached the question of whether a showing of deficient performance or adverse consequence flowing from such deficiency is necessary when a conflict is brought to the court's attention.

*loway* v. *Arkansas*, supra, 435 U.S. 475, and subsequent cases, the court left *Holloway*'s holding intact. The court did note that in *Cuyler* v. *Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), it declined to extend *Holloway*'s automatic reversal in the context of multiple representation of codefendants where no objection to that representation had been raised at trial. The court distinguished *Sullivan* from *Holloway* in that "no special circumstances triggered the trial court's duty of inquiry." (Internal quotation marks omitted.) *Mickens* v. *Taylor*, supra, 535 U.S. 169, quoting *Cuyler* v. *Sullivan*, supra, 346. The *Cuyler* court held that *absent some objection raised at trial* that would alert the court to the possibility of a conflict, the mere circumstance of joint representation was not itself sufficient to trigger the court's duty of inquiry. The *Mickens* court also discussed *Wood* v. *Georgia*, 450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981). In that case, the Supreme Court remanded the case for an inquiry into a conflict of interest where the defendants had been represented by the attorney for their employer and the employer had paid the attorney's fees. *Mickens* explained *Wood*'s rationale for remanding for further inquiry into the possibility of conflict rather than remanding for a new trial by explaining that in *Wood*, the conflict merely was theoretical and that it could not be presumed that such a theoretical conflict actually affected the adequacy of counsel's representation.

We believe the present case presents a circumstance in which the structural integrity of the trial is more obviously compromised than was the case in *Wood*. In *Wood*, the *theoretical* conflict involved the possibility that to the extent that the interest of the defendants and their employer diverged, the defense attorney's representation would be compromised. In the present case, by contrast, we have identified an *actual* conflict as a

result of defense counsel's position as a material witness in the case.

Given those considerations, we find that the court did not fulfill its obligation of conducting a thorough and searching inquiry into the potential conflict brought to its attention by the prosecution, and we conclude that under the circumstances presented by this case, prejudice resulting from trial counsel's conflict may be presumed. Accordingly, pursuant to the principles articulated in *Holloway* v. *Arkansas,* supra, 435 U.S. 475, we reverse the judgment of conviction.

## II

The defendant also claims that defense counsel was burdened by an actual conflict of interest that adversely affected his performance and, therefore, a new trial should be ordered. Because we concluded in part I that the court's inquiry into a potential conflict was inadequate and that the nature of the conflict was such that prejudice to the defendant could be presumed, we need not reach the issue of whether defense counsel was burdened by an actual conflict that adversely affected his performance. When a conflict is shown and the court does not conduct an adequate inquiry, reversal is mandated when prejudice can be presumed from the nature of the conflict. See generally id.

The judgment is reversed and the case is remanded for a new trial.

In this opinion BISHOP, J., concurred.

FLYNN, J., dissenting. I respectfully disagree with and dissent from the majority's decision automatically reversing the defendant's conviction without a showing of harm to him.

"In its recent decision in *Mickens* v. *Taylor,* [535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002)], the

United States Supreme Court reaffirmed the general rule that, in order to demonstrate a sixth amendment violation based on the trial court's failure to inquire into a potential conflict of interest about which it knew or should have known, a defendant *must establish* that the conflict of interest adversely affected his counsel's performance." (Emphasis added.) *State* v. *Parrott*, 262 Conn. 276, 287, 811 A.2d 705 (2003). Ordinarily, this cannot be established by direct appeal, but only by way of habeas corpus. *State* v. *Crespo*, 246 Conn. 665, 687–88, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

I concede that there is an exception to this general rule creating a presumption that harm occurred to the defendant. Compare *Holloway* v. *Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978). However, that exception exists only in cases of dual representation by one attorney of more than one defendant in the same case. That did not occur. Accordingly, I do not agree that the *Holloway* exception should be allowed to subsume the general rule.

For that reason, I dissent.