LLOYD GEORGE MORGAN, JR. *v.* COMMISSIONER
OF CORRECTION
(AC 24270)

Flynn, West and Mihalakos, Js.

Argued September 8, 2004—officially released February 1, 2005

*Raymond L. Durelli*, special public defender, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

WEST, J. The petitioner, Lloyd George Morgan, Jr., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus and requests that we order a new habeas proceeding for reconsideration of his petition. On appeal, the petitioner does not challenge the court's rejection of the underlying claims

in his petition. Rather, he claims that the court violated his due process right to effective assistance of habeas counsel and the correlative right to representation that is free from conflicts of interest. He asserts that the court did so by failing to inquire into the nature of three grievances that he filed against his habeas attorney with the statewide grievance committee prior to the habeas proceedings.[1]

Viewing the record before us, it is not possible for this court to determine whether an actual conflict of interest existed and, if so, whether it rendered counsel's assistance ineffective. We do agree with the petitioner, however, that the record demonstrates that the possibility of a conflict of interest became sufficiently apparent during the habeas proceeding so as to impose on the court a duty to inquire further. Accordingly, we remand the case to the habeas court to determine the nature of the three grievances; in the event that the habeas court finds that an actual conflict of interest existed that influenced habeas counsel in making basic strategic decisions, we reverse the judgment and remand the case for a habeas trial; in the event that the habeas court finds that there was no actual conflict of interest that influenced habeas counsel's basic strategic decision making, we affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal.[2] On

---

[1] In accord with *State* v. *Vega*, 259 Conn. 374, 388, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002), the petitioner does not claim that the filing of a grievance in and of itself is sufficient to establish a per se conflict of interest and a violation of an individual's due process rights. The petitioner claims that the court's failure to inquire into the nature of the grievances denied him his right to effective assistance of counsel.

[2] Because the petitioner does not challenge the court's rejection of the underlying claims in his petition, we limit our discussion of the facts to those that are relevant to the issues on appeal.

April 25, 2000, the petitioner filed a petition for a writ of habeas corpus. The court subsequently appointed Kenneth P. Fox as habeas counsel for the petitioner. On February 10, 2003, the petitioner filed his second, and last, amended petition for a writ of habeas corpus. The petitioner's habeas proceedings took place on March 20 and April 10, 2003. At those proceedings, the petitioner, asking the court to disqualify his habeas attorney, alerted the court to what he believed were two possible claims of conflict of interest against Fox.

First, the petitioner argued that a conflict of interest existed because he disagreed with the strategy that Fox employed at the habeas proceedings. At the proceeding on March 20, 2003, the court explained to the petitioner that "creative differences" in what "course should be taken [do] not constitute a conflict of interest." At the proceeding on April 10, 2003, responding again to the petitioner's dissatisfaction with Fox's strategy, the court stated: "That is not a conflict of interest."[3]

Second, at the proceeding on March 20, 2003, the court asked the petitioner, "How is there a conflict of interest between you and [counsel]?" The petitioner replied, "I have filed several grievances [against] him with the statewide [grievance committee], at least five." Fox promptly corrected the petitioner and informed the court that the petitioner had filed three grievances against him. Immediately after the petitioner had informed the court of the grievances and Fox had confirmed that the petitioner in fact had filed three grievances, the court stated that it "[did not] see any conflict, per se." At no point later in the proceedings did the court inquire into the nature of the grievances filed by the petitioner against Fox.

[3] On appeal, the petitioner agrees that opposing counsel's strategy in and of itself does not constitute a conflict of interest. We therefore decline to consider that claim.

On April 11, 2003, the court denied the petitioner's amended petition for a writ of habeas corpus and issued a memorandum of decision rejecting, on the merits, all of the underlying claims in that petition. On April 17, 2003, the petitioner filed a petition for certification to appeal. The court granted the petition and issued notice thereof on April 24, 2003. On May 5, 2003, the petitioner filed this appeal.

The petitioner claims that the court improperly violated his due process right to effective assistance of counsel and the correlative right to representation that is free from conflicts of interest. He asserts that the court did so by failing to inquire into the nature of three grievances that he filed against his habeas attorney prior to the habeas proceedings. In support of his claim, the petitioner first argues in his brief that there is a right to *effective assistance* of habeas counsel that is predicated on the statutory right to habeas counsel under General Statutes § 51-296 (a).[4] In support of his argument, the petitioner cites *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), and notes with particularity that in that case, our Supreme Court remarked that counsel appointed in postconviction matters must be effective and competent. Id., 838–39.

Citing *State* v. *Martin*, 201 Conn. 74, 82, 513 A.2d 116 (1986), the petitioner then reminds us that "[t]o safeguard a criminal defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial judge in a timely manner." He notes that in *Martin*, our Supreme Court held that when counsel makes a timely assertion of a conflict of interest, "[t]he trial court's

---

[4] Under General Statutes § 51-296 (a), an indigent person has a right to counsel "in any habeas corpus proceeding arising from a criminal matter . . . ."

failure to inquire [is] error." Id., 83. He also cites *State v. Vega*, 259 Conn. 374, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002), in which our Supreme Court reiterated that "[t]here are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . ." (Internal quotation marks omitted.) Id., 388.

The petitioner next argues that when a court becomes aware that a party previously has filed a grievance against his court-appointed counsel, the court, to safeguard the party's right to effective assistance of counsel, must inquire into whether the substance of the grievance constitutes a conflict of interest. To support that argument, the petitioner discusses the facts of *Vega*. In that case, on learning that the defendant had filed a grievance against his court-appointed counsel, the trial court inquired into (1) when the grievance had been filed, (2) whether a copy of the grievance was available and (3) whether the defendant could recall the nature of the grievance. Id., 390–91 n.18. Our Supreme Court "conclude[d] that the trial court conducted an appropriate inquiry as to the conflict of interest alleged by [the defendant's counsel] and the potential violation of the defendant's sixth amendment rights." Id., 391.

Having laid that foundation, the petitioner argues that by informing the court that he previously had filed three grievances against counsel, the court was obligated to inquire into whether the substance of any of those grievances constituted a conflict of interest. He further argues that by failing to conduct *any* inquiry into the nature of those grievances, the court deprived him of his due process right to effective assistance of counsel and the correlative right to representation that is free from conflicts of interest. To the extent that the court

should have inquired into the nature of the grievances, we agree with the petitioner.

Reviewing the legal principles that guide us in our analysis, we first note that although there is no constitutional right to counsel in habeas proceedings, "General Statutes § 51-296 . . . creates a statutory right to counsel . . . for an indigent defendant . . . *in any habeas corpus proceeding arising from a criminal matter* . . . ." (Emphasis in original; internal quotation marks omitted.) *Franko* v. *Bronson,* 19 Conn. App. 686, 691–92, 563 A.2d 1036 (1989). In addition to creating a right to counsel in habeas proceedings themselves, § 51-296 creates a right to counsel in appeals therefrom. Id., 692. We previously have concluded that "the [statutory] right to appeal in habeas corpus actions should be extended the same protections as those set out in [*Anders* v. *California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967)]." *Franko* v. *Bronson,* supra, 692. "The *Anders* decision [was] based upon constitutional requirements guaranteed by the sixth amendment in criminal cases."[5] Id., 691. Given our willingness to extend the weight of sixth amendment protection to the statutory right to appeal in habeas actions, we therefore also extend the weight of sixth amendment protection to the underlying statutory right to counsel in habeas proceedings themselves.

In so doing, we note that "[t]he sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to [the] effective assistance of counsel. . . . Where a constitutional right to counsel exists . . . *there is a correlative right to representation that*

[5] The sixth amendment to the United States constitution provides in relevant part that "the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

*is free from conflicts of interest. . . .* To safeguard a criminal defendant's right to the effective assistance of counsel, *a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial [court] in a timely manner. . . .* In discharging this duty, the trial court must be able, and be freely permitted, to rely upon [defense] counsel's representation that the possibility of such a conflict does or does not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court. . . . The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Drakeford*, 261 Conn. 420, 426–27, 802 A.2d 844 (2002).

Given our Supreme Court's recitation of what sixth amendment protection means and our extension of the weight of that protection to the statutory right to counsel in habeas proceedings, we conclude that a petitioner in a habeas proceeding has both the right to effective assistance of habeas counsel and the right to be represented by habeas counsel who is free from conflicts of interest. We further conclude that in order to safeguard a habeas petitioner's right to the effective assistance of habeas counsel, a habeas court, like a criminal trial court, has an affirmative obligation to explore the possibility that habeas counsel has a conflict of interest when that possibility is brought to the attention of the habeas court in a timely manner. In discharging that duty, the habeas court must be able, and be freely permitted, to rely on habeas counsel's representation that the possibility of such a conflict does or does not exist. The court may rely on the solemn representation of a fact made by habeas counsel as an officer of the court. The course thereafter followed by the court in its inquiry depends on the circumstances of the particular case.

Next, recognizing (1) that appellate review of a habeas court's actions at a habeas proceeding can be analogous to appellate review of a trial court's actions at a trial[6] and (2) that "[w]hen a defendant . . . alleges that the trial court's failure to inquire about a possible conflict of interest led to the deprivation of a constitutional right during the criminal prosecution, the claim is proper for a direct appeal"; *State* v. *Phidd,* 42 Conn. App. 17, 35, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997); we apply the previously stated sixth amendment analysis to conclude that when a petitioner alleges that the habeas court's failure to inquire about a possible conflict of interest led to the deprivation of the statutory right to effective assistance of habeas counsel during the habeas proceeding, the claim is proper for a direct appeal.[7] See id.

In *State* v. *Drakeford,* supra, 261 Conn. 426, the defendant claimed that he was entitled to a new criminal

---

[6] Compare *Gold* v. *Warden,* 222 Conn. 312, 610 A.2d 1153 (1992) (reversing habeas court's judgment granting petition for writ of habeas corpus and ordering new habeas hearing where habeas court improperly refused to allow criminal trial judge to testify) with *Reynolds* v. *Vroom,* 132 Conn. 53, 42 A.2d 336 (1945) (setting aside trial court's judgment and ordering new trial where trial court improperly refused to allow certain testimony).

[7] The respondent, the commissioner of correction, concedes "that the petitioner, by distinctly raising the issue of a conflict of interest [in the habeas proceeding] preserved the question of whether the court's inquiry was adequate, at least under the particular circumstances of this case." We agree. As the respondent points out, given the unique problems presented by a claim of a conflict of interest, it would be unduly harsh to require a layperson who may have a legitimate claim of conflict of interest either (1) to appreciate the difference between a claim that counsel actually was conflicted and a claim that the court failed to inquire into a possible conflict or (2) to depend on the assistance of conflict laden counsel to preserve every aspect of his claim for him. We therefore conclude, under the circumstances of this case, in which the court did not make any inquiry into the nature of the grievances in question, that by alerting the court to the existence of the grievances when asked how there was a conflict of interest, the petitioner preserved for appellate review his claim that the court improperly failed to inquire into the nature of those grievances.

trial because the trial court, having been alerted to the possibility that defense counsel had a conflict of interest, failed to conduct an adequate inquiry into the potential conflict. In that case, this court; see *State* v. *Drakeford*, 63 Conn. App. 419, 777 A.2d 202 (2001), aff'd, 261 Conn. 420, 802 A.2d 844 (2002); and the Supreme Court both agreed to review the petitioner's allegations that his rights under the sixth amendment and article first, § 8, of our state constitution had been jeopardized by the actions of the *trial* court.[8] *State* v. *Drakeford*, supra, 261 Conn. 422. Similarly, the petitioner in this case claims that he is entitled to a new habeas proceeding because the court, having been alerted to the grievances and the possibility that counsel had a conflict of interest, failed to conduct an inquiry into whether any of the grievances evidenced a conflict. Given (1) our application of the weight of sixth amendment protection to the statutory right to counsel in habeas proceedings, (2) our previously stated analogy of appellate review of a trial court's actions at trial to appellate review of a habeas court's actions at a habeas proceeding and (3) our decision in *Drakeford* to review whether the actions of the trial court improperly deprived the defendant of his right to representation that is free from conflicts of interest, we choose to review the petitioner's allegation that his *statutorily created* due process rights have been jeopardized by the actions of the *habeas* court.[9]

---

[8] Although this court and the Supreme Court both agreed in *Drakeford* that the trial court *had in fact conducted a sufficient inquiry* into whether the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, it is important to note that neither court excluded from the scope of review allegations that *the trial court itself had acted improperly.*

[9] In *Lapointe* v. *Commissioner of Correction*, 67 Conn. App. 674, 789 A.2d 491, cert. denied, 259 Conn. 932, 793 A.2d 1084 (2002), this court determined that the petitioner's claim could not be raised on direct appeal. In that case, we held that the petitioner improperly raised a claim of ineffective assistance of habeas counsel on direct appeal to this court from the dismissal of his habeas petition and that the proper forum in which to litigate that claim was the habeas court by way of a second habeas petition alleging ineffectiveness of his first habeas counsel. Id., 679–80.

Accepting that the petitioner's claim is proper for a direct appeal, we review for abuse of discretion; see *State* v. *Webb*, 238 Conn. 389, 417, 680 A.2d 147 (1996); *Fiddelman* v. *Redmon*, 31 Conn. App. 201, 210, 623 A.2d 1064, cert. denied, 226 Conn. 915, 628 A.2d 986 (1993); the court's decision to deny the petitioner's motion to disqualify his habeas counsel for an alleged conflict of interest. "We accord wide discretion to a trial court's ruling on a motion for disqualification of counsel for conflict of interest. . . . In determining whether the trial court abused its discretion, we indulge every reasonable presumption in favor of the correctness of the court's decision." (Citation omitted.) *Fiddelman* v. *Redmon*, supra, 210. "The ultimate issue is whether the [habeas] court could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Webb*, supra, 417.

Whether the court in this case reasonably concluded that disqualification of the petitioner's counsel was not required depends on whether the substance of any of

In the present case, however, we are not concerned as much with a claim involving the ineffectiveness of the petitioner's habeas counsel as we are with a claim that the court failed to comply with its affirmative duty to inquire about a potential conflict of interest. Under those circumstances, as noted in the text of this opinion, we are instructed by *State* v. *Phidd*, supra, 42 Conn. App. 17. In that case, we stated: "The defendant claims that the trial court's failure to inquire of him about a possible conflict of interest of his trial counsel violated his constitutional right to conflict free representation. *Although this claim appears to be more appropriate for a habeas proceeding because the constitutional right at issue deals with the trial counsel's ability to represent his client effectively . . . it may be pursued on direct appeal because the defendant is challenging the actions of the trial court, not the actions of his counsel.*" (Citation omitted; emphasis added.) Id., 32–33. "When a defendant . . . alleges that the trial court's failure to inquire about a possible conflict of interest led to the deprivation of a constitutional right during the criminal prosecution, the claim is proper for a direct appeal." Id., 35. Likewise, then, when a petitioner alleges that the habeas court's failure to inquire about a possible conflict of interest led to the deprivation of the right to effective assistance of habeas counsel during habeas proceedings, the claim is proper for a direct appeal.

the aforementioned grievances constituted an actual conflict of interest. The court, however, did not conduct any inquiry into the nature of the grievances.[10] Consequently, the record lacks the information required to determine whether the court's conclusion was reasonable.

In *State* v. *Martin,* supra, 201 Conn. 77, the trial court, without inquiring into defense counsel's timely assertion that a conflict of interest existed, summarily denied both defense counsel's motion to withdraw and motion for a mistrial. Analyzing that case, our Supreme Court in *State* v. *Vega,* supra, 259 Conn. 374, stated: "[T]he trial court was under a duty to investigate the defense counsel's assertion of a conflict of interest. . . . Yet, without inquiry as to the legitimacy of the attorney's assertion, the court summarily denied the defendant's motion. This was error. To safeguard a criminal defendant's right to the effective assistance of counsel, *a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial judge in a timely manner.*" (Emphasis added; internal quotation marks omitted.) Id., 388–89.

In *Mickens* v. *Taylor,* 535 U.S. 162, 164, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), the United States Supreme Court addressed "what a defendant must show in order to demonstrate a Sixth Amendment violation

---

[10] The respondent, the commissioner of correction, argues that the court provided the petitioner with ample opportunity to discuss any potential conflicts of interest contained within the grievances and that it therefore satisfied its affirmative duty to inquire. The respondent argues that the court's thorough inquiry into the petitioner's first claim, namely, that a conflict of interest existed because the petitioner disagreed with his attorney's strategy, was sufficient. The respondent argues that the court was not obligated to question anyone specifically about the nature of the grievances. In light of case law discussed in the text of this opinion, we disagree with the respondent. We believe that the court did have an affirmative obligation to inquire specifically into the nature of the grievances.

where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known." In its analysis, the court first stated that "[a]s a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [*Strickland* v. *Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]." *Mickens* v. *Taylor*, supra, 166. The *Mickens* court then noted an exception to the general rule: "We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. . . . But only in 'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." (Citations omitted.) Id., 166. The court further stated that it "[had] held in several cases that 'circumstances of that magnitude' may also arise when the defendant's attorney actively represented conflicting interests" and that "[t]he nub of the question before [the court was] whether the principle established by [those] cases provide[d] an exception to the general rule of *Strickland* under the circumstances of the [*Mickens*] case." Id., 166–67. To answer that question, the court examined several cases.

Considering "*Holloway* v. *Arkansas*, [435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), in which] defense counsel had objected that he could not adequately represent the divergent interests of three codefendants"; *Mickens* v. *Taylor*, supra, 535 U.S. 167; the *Mickens* court stated that *Holloway* "create[d] an automatic reversal rule only where defense counsel is forced to

represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." Id., 168.

The *Mickens* court next examined *Cuyler* v. *Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). In that case, "the respondent was one of three defendants accused of murder who were tried separately, represented by the same counsel. Neither counsel nor anyone else objected to the multiple representation, and counsel's opening argument at [the defendant] Sullivan's trial suggested that the interests of the defendants were aligned." *Mickens* v. *Taylor*, supra, 535 U.S. 168. The *Mickens* court stated that in *Cuyler*, it had both "declined to extend *Holloway*'s automatic reversal rule to [that] situation and held that, absent objection, a defendant must demonstrate that 'a conflict of interest actually affected the adequacy of his representation.' " Id.

Finally, the *Mickens* court examined *Wood* v. *Georgia*, 450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981), in which three indigent defendants each had been represented in a probation revocation hearing by their employer's attorney, whose fees were paid by the employer. *Mickens* v. *Taylor*, supra, 535 U.S. 169. The *Mickens* court stated that in *Wood*, "the possibility that counsel was actively representing the conflicting interests of [the] employer and [the] defendants 'was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further.' " Id. The *Mickens* court then stated that "[b]ecause [o]n the record before [it], [the *Wood* court] [could not] be sure whether counsel was influenced in his basic strategic decisions by the interests of the employer who hired him . . . [it] remanded for the trial court to determine whether the conflict of interest that [the] record strongly suggest[ed] actually existed . . . ." (Citations omitted; internal quotation marks omitted.) Id., 170.

The petitioner in *Mickens* had argued that "the remand instruction in *Wood* established an 'unambiguous rule' that where the trial judge neglects a duty to inquire into a potential conflict, the defendant, to obtain reversal of the judgment, need only show that his lawyer was subject to a conflict of interest, and need not show that the conflict adversely affected counsel's performance. . . . He relie[d] upon the language in the remand instruction directing the trial court to grant a new revocation hearing if it determine[d] that 'an actual conflict of interest existed,' [*Wood* v. *Georgia*, supra, 450 U.S. 273], without requiring a further determination that the conflict adversely affected counsel's performance." (Citation omitted.) *Mickens* v. *Taylor*, supra, 535 U.S. 170–71.

The *Mickens* court, however, disagreed with the petitioner. It stated: "As used in the remand instruction . . . 'an actual conflict of interest' meant precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties. It was shorthand for the statement in *Sullivan* that 'a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief.' . . . This is the only interpretation consistent with the *Wood* Court's earlier description of why it could not decide the case without a remand: 'On the record before us, we cannot be sure whether counsel *was influenced in his basic strategic decisions* by the interests of the employer who hired him. *If this was the case*, the due process rights of petitioners were not respected . . . .' Petitioner's proposed rule of automatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the *Sullivan*-mandated inquiry, makes little policy sense."[11] (Citations omitted; emphasis in original.) Id., 171–72.

---

[11] In *State* v. *Lopez*, 80 Conn. App. 386, 835 A.2d 126 (2003), cert. granted, 267 Conn. 912, 840 A.2d 1174 (2004), this court both reversed the habeas

The *Mickens* court further stated: "The trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any other way renders the verdict unreliable. . . . Nor does the trial judge's failure to make the *Sullivan*-mandated inquiry often make it harder for reviewing courts to determine conflict and effect, particularly since those courts may rely on evidence and testimony whose importance only becomes established at trial. Nor, finally, is automatic reversal simply an appropriate means of enforcing *Sullivan*'s mandate of inquiry." (Citation omitted.) Id., 173.[12]

court's judgment denying the petitioner's petition for a writ of habeas corpus and remanded the case for new habeas proceedings because we determined that there was "an *actual* conflict as a result of defense counsel's position as a material witness in the case." (Emphasis in original.) Id., 397–98. In that case, the victim, who claimed that her mother and the defendant had forced her to write and to sign a statement recanting the allegations against him, told the defendant's attorney that the statement was true, and had signed the statement after it was typewritten onto defense counsel's stationery and acknowledged by him as an officer of the court. Id., 394. "We believe[d] [that] . . . case present[ed] a circumstance in which the structural integrity of the trial [was] more obviously compromised than was the case in [*Wood* v. *Georgia*, supra, 450 U.S. 261]. In *Wood*, the *theoretical* conflict involved the possibility that, to the extent that the interest of the defendants and their employer diverged, the defense attorney's representation would be compromised." (Emphasis in original.) *State* v. *Lopez*, supra, 397. "The problems posed by the conflicted representation in [*Lopez*] pose[d] the same difficulties as those involved in cases of joint representation of multiple criminal defendants, as set forth in *Holloway*." Id., 395.

The present case, however, is more like *Wood* than it is like *Holloway* and *Lopez*. Unlike the conflicts in *Holloway* and *Lopez*, the conflict in this case, as in *Wood*, is merely theoretical, and it cannot be presumed that such a theoretical conflict actually affected the adequacy of habeas counsel's representation. See id., 397. Our decision here to remand the case, therefore, does not contradict our decision in *Lopez* to reverse the judgment and to remand the case for a new trial.

[12] "Some Courts of Appeals have read a footnote in *Wood* v. *Georgia*, [supra, 450 U.S. 272 n.18], as establishing that outright reversal is mandated when the trial court neglects a duty to inquire into a potential conflict of interest. . . . The *Wood* footnote says that *Sullivan* does not preclude 'raising . . . a conflict-of-interest problem that is apparent in the record' and that '*Sullivan mandates* a reversal when the trial court has failed to make [the requisite] inquiry.' [Id.] These statements were made in response to the

The present case is one of those in which the failure to make the *Sullivan* mandated inquiry makes it impossible for this court to determine whether a conflict existed and, if it did, its effect. We have no evidence before us in the record that reveals whether the nature of the grievances constituted an actual conflict of interest. The alleged conflict here is merely theoretical. As we previously noted, our Supreme Court has stated: "In discharging [its] duty [to inquire], the . . . court must be able, and be freely permitted, to rely upon . . . counsel's representation that the possibility of such a conflict does or does not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court." (Citations omitted; internal quotation marks omitted.) *State* v. *Drakeford*, supra, 261 Conn. 427. The petitioner's habeas counsel, however, did not make any representation that the grievances did or did not evidence a possible conflict of interest. He asserted merely that the petitioner had filed three, not five, grievances against him. Those circumstances, in our opinion, warranted an inquiry into the nature of the grievances. The court, however, summarily denied the petitioner's motion to disqualify his attorney without inquiry as to the legitimacy of the petitioner's assertion that the grievances represented a conflict of interest. As in *State* v. *Martin*, supra, 201 Conn. 82, that was improper.

We therefore conclude: (1) the possibility of a conflict of interest became sufficiently apparent during the

dissent's contention that the majority opinion had 'gone beyond' *Cuyler* v. *Sullivan*, see [*Wood* v. *Georgia*, supra, 272 n.18], in reaching a conflict-of-interest due process claim that had been raised neither in the petition for certiorari nor before the state courts, see id., at 280 (White, J., dissenting). To the extent the '*mandates* a reversal' statement goes beyond the assertion of mere jurisdiction to reverse, it is dictum—and dictum inconsistent with the disposition in *Wood*, which was *not* to reverse but to vacate and remand for the trial court to conduct the inquiry it had omitted." (Citations omitted; emphasis in original.) *Mickens* v. *Taylor*, supra, 535 U.S. 170 n.3.

habeas proceeding to impose on the court a duty to inquire further; (2) the court failed to inquire into the nature of the grievances; (3) consequently, the record is inadequate to determine whether the court reasonably could have reached its conclusion that no conflict existed; (4) on the record before us, we cannot ascertain whether counsel was influenced in his basic strategic decisions by any conflicts of interest; and (5) because the conflict merely is theoretical, automatic reversal is not an appropriate means here of enforcing *Sullivan*'s mandate of inquiry, as similarly was the case in *Wood* v. *Georgia*, supra, 450 U.S. 261.

The case is remanded for further proceedings to determine the nature of the three grievances; in the event that the habeas court finds that an actual conflict of interest existed that influenced habeas counsel in making basic strategic decisions, and no timely appeal is taken from that decision, the judgment is reversed and the case is remanded for a new trial on the petition for a writ of habeas corpus; in the event that the habeas court finds that there was no actual conflict of interest that influenced habeas counsel's basic strategic decision making, and no timely appeal is taken from that decision, the judgment is affirmed.

In this opinion the other judges concurred.