## STATE OF CONNECTICUT *v.* WILLIAM DRAKEFORD, JR.
### (SC 16551)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued April 18—officially released August 13, 2002

*William B. Westcott*, special public defender, for the appellant (defendant).

*Linda N. Howe*, assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, William Drakeford, Jr., guilty of assault in the first degree as an accessory in violation of General Statutes §§ 53a-59 (a) (5)[1] and 53a-8,[2] attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-49,[3] and conspiracy to commit assault

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[2] General Statutes § 53a-8 provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

[3] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or

in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-48.[4] The trial court rendered judgment in accordance with the jury verdict, and the defendant appealed to the Appellate Court, which affirmed the judgment of conviction. *State* v. *Drakeford,* 63 Conn. App. 419, 428, 777 A.2d 202 (2001). We granted the defendant's petition for certification to appeal limited to the issue of whether the Appellate Court properly had concluded that the scope of the trial court's inquiry into defense counsel's potential conflict of interest and the court's concomitant finding that defense counsel had no conflict of interest did not result in a deprivation of the defendant's constitutional right to the effective assistance of counsel.[5] *State* v. *Drakeford,* 257 Conn. 901, 776 A.2d 1152 (2001). We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "On October 26, 1996, Nigel Douglas and Desmond Padilla were sitting on the front [steps of a house located at] 132 Lansing Street in Bridgeport. A car [in which the defendant was riding stopped] in front of the residence . . . . At trial, there was a dispute as to whether the

---

omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . ."

[4] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

[5] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's finding of no conflict of interest under the facts of this case?" *State* v. *Drakeford,* 257 Conn. 901, 776 A.2d 1152 (2001). "After hearing the parties, however, and considering the case more fully, we conclude that the certified [question] does not properly frame the [issue] that must be resolved." *Stamford Hospital* v. *Vega,* 236 Conn. 646, 656, 674 A.2d 821 (1996). We, therefore, rephrase the certified question so as to bring it into conformity with the issue presented by this appeal. E.g., id., 648–49 n.1.

defendant remained in or exited the vehicle. It was undisputed that at least one male got out of the car . . . and made a remark to Douglas and Padilla to the effect that they like robbing people. Thereafter, gunshots were fired from the car in the direction of the house, striking Padilla. The state's theory of the case was that the shooting was in retaliation for Douglas' participation in a previous robbery involving a number of perpetrators. Because Padilla was not involved in the robbery, the state reasoned that Douglas was the intended target of the shooting.

"Prior to the trial, the state filed a motion to disqualify the defendant's trial counsel, attorney Joseph Mirsky, on March 31, 1998. Mirsky had filed an appearance for Douglas and Richard Foster, a codefendant in the robbery case, but his appearance for Douglas was withdrawn shortly thereafter. The state argued that, as a result of his prior representation in the robbery case, Mirsky might have obtained information from Douglas as to whether the defendant was a witness to the robbery or had information about the robbery.

"At the April 15, 1998 hearing on the state's motion, Mirsky informed the court that there was no conflict in the present case because he had represented Douglas, a key witness in the state's case against the defendant, in a previous matter. He stated that he never appeared in court to represent Douglas, never engaged in pretrial discussions on Douglas' behalf and never represented Douglas in any dispositions. Mirsky further assured the court that he had received no information from Douglas that he could use to cross-examine him more vigorously as a witness. Mirsky claimed that he did not know the disposition of Douglas' case until he saw a reference to it in Foster's presentence report and that he did not know who represented Douglas after he withdrew. Mirsky assured the court that there was no conflict in his representation of the defendant because he had

learned of no information regarding Douglas from his brief representation of him in the robbery case.[6] Thereafter, the court [*Ronan, J.*] denied the state's motion on April 20, 1998.

"Prior to the selection of a jury on July 21, 1998, the court [*Stodolink, J.*] revisited the issue of whether a conflict existed in Mirsky's representation of the defendant. At that time, the state provided Mirsky with a complete copy of the state's file on Douglas for his review, prior to the start of the defendant's trial, for any material that would indicate the existence of a conflict. [The assistant state's attorney who provided Mirsky with the state's file informed the court, in Mirsky's presence, that Mirsky had told her that his review of the file had revealed nothing to cause him to change his mind that] no conflict existed.[7]

"At trial, numerous eyewitnesses testified about the events surrounding the shooting. Padilla claimed that the defendant, who was present in the car, was not the shooter. Padilla testified that only the driver, whom he did not know, got out of the car and shot at him. He further claimed that he knew the defendant from high school, where they were classmates. Patricia Holder and her daughter, Sharnell Holder, lived on Lansing Street and were washing their car in their driveway at the time of the shooting. Patricia Holder testified that a person [exited from] the driver's side door and fired at Douglas and Padilla, and that she saw the defendant [exit from] the passenger side and fire. Sharnell Holder testified that she saw someone exit [from] the driver's side of the car, but that she did not see him fire his

---

[6] Douglas had pleaded guilty to committing the robbery and, at the time of the defendant's trial, was serving his sentence for that offense.

[7] The trial court did not inquire of Mirsky on this occasion, except to ask him whether he had reviewed the state's file. Mirsky responded: "I've looked over most of it, yes, Your Honor."

gun. She further testified that she saw the defendant [exit from] the passenger side and fire a gun.

"Douglas testified in a manner consistent with Mirsky's assertion that no conflict existed from his previous brief representation of the state's witness. . . . Douglas [testified that the defendant had emerged from the car in front of 132 Lansing Street and opened fire in the direction of the front steps. Douglas further testified that he] did not remember if the defendant was involved in the robbery. . . . The jury found the defendant guilty, and the court sentenced him to an effective term of fifteen years incarceration." (Internal quotation marks omitted.) *State* v. *Drakeford*, supra, 63 Conn. App. 420–22.

On appeal to the Appellate Court, the defendant claimed that the trial court's failure to disqualify Mirsky resulted in the deprivation of his right to conflict-free representation guaranteed by the sixth amendment to the United States constitution[8] and article first, § 8, of the Connecticut constitution.[9] Id., 422 and n.1. Specifically, the defendant claimed that the trial court, having been apprised by the state of the possibility that Mirsky had a conflict of interest, improperly relied on Mirsky's

---

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

The sixth amendment right "to have the assistance of counsel" long has been interpreted to mean the right to the effective assistance of counsel. E.g., *McMann* v. *Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). A corollary to the right to the effective assistance of counsel is the right to conflict-free representation. See *Glasser* v. *United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942). The sixth amendment right to the effective assistance of counsel is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. See, e.g., *Evitts* v. *Lucey*, 469 U.S. 387, 392, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).

[9] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

representations that no such conflict existed rather than conducting, sua sponte, a more thorough inquiry into the matter or, in the alternative, canvassing the defendant regarding the potential conflict of interest.[10] Id., 422–23. The defendant further claimed that the trial court's failure to undertake such an inquiry or to obtain a waiver from the defendant automatically entitled him to a new trial. Id., 423, 428 n.5. The Appellate Court rejected the defendant's claims, concluding that the trial court had satisfied its obligation to explore the alleged conflict of interest after being alerted to its possible existence and, on the basis of the information provided by Mirsky, properly had determined that there was no reason to disqualify him.[11] Id., 427, 428.

On appeal to this court, the defendant renews his claim that he is entitled to a new trial on the ground that the trial court failed to conduct an adequate inquiry into Mirsky's potential conflict of interest. He also claims that the trial court was obligated to obtain the defendant's waiver of the alleged conflict once the state brought the matter to the court's attention. We agree with the Appellate Court that the trial court adequately inquired into Mirsky's potential conflict of interest and that Mirsky's responses to the questions posed by the court constituted a sufficient basis for the court's conclusion that no conflict existed. Consequently, we also agree with the Appellate Court that the defendant was not deprived of his constitutional right to the effective assistance of counsel.

"The sixth amendment to the United States constitution as applied to the states through the fourteenth

[10] We note that the record of the proceedings in the trial court does not indicate whether the defendant was present either on April 15, 1998, or on July 21, 1998, when the court questioned Mirsky about the potential conflict of interest.

[11] The Appellate Court also concluded that, on the basis of its review of the record, the defendant had not been "prejudiced by Mirsky's brief representation of Douglas." State v. Drakeford, supra, 63 Conn. App. 427.

amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to [the] effective assistance of counsel. *Powell* v. *Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *Festo* v. *Luckart*, 191 Conn. 622, 626, 469 A.2d 1181 (1983). Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest. *Wood* v. *Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981)." (Internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 78, 513 A.2d 116 (1986); accord *State* v. *Crespo*, 246 Conn. 665, 685, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). "To safeguard a criminal defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial [court] in a timely manner. See *Holloway* v. *Arkansas*, [435 U.S. 475, 484, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)]; *Festo* v. *Luckart*, supra, [626]." (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 389, 788 A.2d 1221 (2002). In discharging this duty, "the trial court must be able, and be freely permitted, to rely upon [defense] counsel's representation that the possibility of such a conflict does or does not exist. *Kaplan* v. *United States*, 375 F.2d 895, 897 (9th Cir.), cert. denied, 389 U.S. 839, 88 S. Ct. 67, 19 L. Ed. 2d 103 (1967); [accord] *Willis* v. *United States*, 614 F.2d 1200, 1206 (9th Cir. 1980). The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court. *Kaplan* v. *United States*, supra [897]. The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case." (Internal quotation marks omitted.) *State* v. *Martin*, supra, 82; accord *State* v. *Vega*, supra, 389; cf. *State* v. *Cator*, 256 Conn. 785, 795, 781 A.2d 285 (2001) ("[a]bsent any reason to the contrary, the trial

court may rely on [defense counsel's] representation that there is no conflict, and it has no obligation to conduct any further inquiry into the subject").

"Before reviewing the defendant's claim, we underscore that our review is of the actions of the trial court, not of the actions of defense counsel. Almost without exception, we have required that a claim of ineffective assistance of counsel . . . be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, rather than by those of his counsel. . . . We have addressed such claims, moreover, only whe[n] the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development. . . . Our analysis, therefore, is restricted to the actions of the trial court . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Vega*, supra, 259 Conn. 385.

The state properly raised the issue of Mirsky's potential conflict of interest in its March 31, 1998 motion to disqualify,[12] and, on two separate occasions, the court inquired about that potential conflict. At the April 15, 1998 hearing on the state's motion, Mirsky apprised the court that no conflict existed notwithstanding the fact that he previously had represented Douglas in connection with the robbery case. As we previously indicated, Mirsky had advised the trial court that he had repre-

---

[12] As the state notes, its motion to disqualify Mirsky was a prophylactic measure intended to alert the trial court concerning the possibility of an actual conflict of interest. In light of Mirsky's representations that no conflict existed, the state had no reason to challenge the trial court's denial of its motion.

sented Douglas only briefly in connection with the rob-
bery case and that he never had appeared in court with
Douglas or engaged in any plea discussions with the
state on behalf of Douglas. Mirsky further indicated
that he had not received any information from Douglas
that related to the defendant or that otherwise might
have had a bearing on his cross-examination of Douglas
in the present case.

The trial court revisited the matter on July 21, 1998,
immediately prior to jury selection. On that occasion,
the assistant state's attorney informed the court that
she had provided Mirsky with the state's entire file on
Douglas' robbery case so that Mirsky could be certain
that he had no conflict in continuing to represent the
defendant.[13] The assistant state's attorney further
advised the court, in Mirsky's presence, that Mirsky
personally had notified her that nothing in the state's
file had caused him to change his position that no con-
flict existed.

As we have stated, the trial court was free to credit
the representations of Mirsky, as an officer of the court,
that he did not have a conflict of interest arising out
of his prior representation of Douglas. Moreover, Mir-
sky did not merely *assert* that no such conflict existed
but, rather, explained that, during the short period of
time during which he had represented Douglas, he
learned nothing from or about Douglas that related in
any way to his representation of the defendant. In the
absence of anything in the record to cast doubt on the
validity of Mirsky's representations, we agree with the
Appellate Court that those representations reasonably
supported the trial court's conclusion that no conflict

[13] The assistant state's attorney explained to the trial court that she had
provided Mirsky with the entire state's file, notwithstanding Mirsky's earlier
representations that no conflict existed, in "an abundance of caution."

existed and, therefore, that there was no need for the trial court to take further action.[14]

The defendant contends that article first, § 8, of the Connecticut constitution provides greater protection than the sixth amendment to the United States constitution in regard to safeguarding a criminal defendant's right to conflict-free representation. In particular, the defendant asserts that, under the state constitution, the trial court was obligated to advise the defendant of

[14] The defendant also argues that the record supports his claim that Mirsky had an actual conflict of interest and, furthermore, that the conflict adversely affected Mirsky's performance. See, e.g., State v. Crespo, supra, 246 Conn. 689 (when defendant alleges actual conflict of interest, defendant "must establish [1] that counsel actively represented conflicting interests and [2] that conflict adversely affected [counsel's] performance"). The defendant's claim that Mirsky's alleged conflict of interest had an adverse effect on Mirsky's performance is predicated on the fact that Mirsky successfully had objected to the efforts of the state, on direct examination of Douglas, to elicit additional details about the robbery after Douglas already had testified that he could not remember whether the defendant had been involved in the robbery. The defendant asserts that Mirsky's decision to limit Douglas' testimony about the robbery likely was due to Mirsky's prior representation of Douglas in view of the fact that there is no other explanation for Mirsky's efforts to prevent the jury from learning of the details of Douglas' involvement in the robbery. We reject the defendant's claim for several reasons. First, the record of the proceedings in the trial court does not support the defendant's contention that a conflict of interest existed; indeed, as we have explained, Mirsky's representations fully supported the trial court's contrary conclusion. Second, on this direct appeal, in which the defendant alleges ineffective assistance of counsel, we focus primarily on the actions of the trial court, not the actions of trial counsel. See, e.g., State v. Vega, supra, 259 Conn. 385. Finally, even if we were to consider Mirsky's conduct in evaluating the defendant's claim of an actual conflict, we agree with the observation of the Appellate Court that Mirsky reasonably may have concluded, as a tactical matter, that any further testimony by Douglas about his own participation in the robbery gave rise to a risk that Douglas would recall the defendant's involvement in the robbery, thereby providing a motive for the defendant's conduct, namely, that the defendant attempted to shoot Douglas in retaliation for Douglas' role in the robbery. See State v. Drakeford, supra, 63 Conn. App. 427. We note, moreover, that Mirsky aggressively cross-examined Douglas concerning his identification of the defendant as the shooter. Thus, on the present record, the defendant's claim of an actual conflict that undermined Mirsky's performance must fail.

Mirsky's potential conflict of interest once the issue had been raised by the state and, unless the defendant waived the potential conflict, to disqualify Mirsky from representing the defendant.[15] Although the defendant acknowledges that he cannot prevail on this claim under the federal constitution, he contends that article first, § 8, of the state constitution dictates our recognition of a per se rule requiring the trial court to canvass a criminal defendant any time the state apprises the court that defense counsel may have a conflict of interest. We previously have stated, however, that "the state and federal constitutional standards for review of ineffective assistance of counsel claims are identical." *Aillon* v. *Meachum*, 211 Conn. 352, 355–56 n.3, 559 A.2d 206 (1989); accord *Phillips* v. *Warden*, 220 Conn. 112, 131 n.15, 595 A.2d 1356 (1991); see also *State* v. *Fernandez*, 254 Conn. 637, 652, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001) (treating provisions of article first, § 8, and sixth amendment as "essentially coextensive"). Consequently, the defendant's claim must fail inasmuch as his sixth amendment right to the effective assistance of counsel is coextensive with his right to the effective assistance of counsel under the state constitution.

Moreover, the defendant relies on only two cases, *State* v. *Stoddard*, 206 Conn. 157, 537 A.2d 446 (1988), and *State* v. *Piorkowski*, 243 Conn. 205, 217, 700 A.2d 1146 (1997), in support of his claim under the state constitution. In *Stoddard*, we held that the due process clause of article first, § 8, of our state constitution requires the police to apprise a suspect whom they are

---

[15] Specifically, the defendant asserts that "under the circumstances of this case [in which] the state [has] filed a formal, written motion to disqualify [the] defendant's trial counsel on the [ground] of a potential conflict, [the] independent right to the meaningful assistance of counsel [guaranteed by the Connecticut constitution] should make it reversible error for the trial court to permit the prosecution to proceed without first canvassing the defendant to be sure he is aware of the state's claims of conflict."

holding for custodial interrogation "of timely efforts by counsel to render pertinent legal assistance." *State* v. *Stoddard*, supra, 166. Approximately two years prior to the release of our decision in *Stoddard*, the United States Supreme Court had held that the federal constitution did not impose a duty on law enforcement personnel to inform suspects of counsel's efforts to render legal assistance. *Moran* v. *Burbine*, 475 U.S. 412, 422–23, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). Thus, it is true that the state constitution provides suspects with greater protection than the federal constitution in such circumstances. As we stated in *Aillon*, however, "[t]he focus in *Stoddard* on when the right to counsel attaches . . . has not the slightest bearing on the standard to be employed in assessing an ineffective assistance of counsel claim under either our federal or state constitutions." *Aillon* v. *Meachum*, supra, 211 Conn. 355–56 n.3.

In *Piorkowski*, we addressed the issue of whether article first, § 8, of the Connecticut constitution, in contrast to the sixth amendment to the United States constitution, requires the presence of counsel for a valid waiver of the right to counsel even when the defendant himself initiates contact with the police and has been advised of his rights in accordance with *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).[16] See *State* v. *Piorkowski*, supra, 243

---

[16] The United States Supreme Court has indicated that an accused can effect a valid waiver of his *sixth amendment* right to counsel upon the receipt of *Miranda* warnings, regardless of whether the police or the accused initiated contact and regardless of the presence of counsel at the time of the waiver. See *Patterson* v. *Illinois*, 487 U.S. 285, 298–300, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988); see also *Michigan* v. *Harvey*, 494 U.S. 344, 352, 110 S. Ct. 1176, 108 L. Ed. 2d 293 (1990) ("[N]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney. We have already held that a defendant whose Sixth Amendment right to counsel has attached by virtue of an indictment may execute a knowing and intelligent waiver of that right in the course of a police-initiated interrogation.").

Conn. 213. We concluded "that article first, § 8, did not require the presence of counsel for a valid waiver of the right to counsel, when [an accused] initiates contact with the police and has been properly advised of his *Miranda* rights."[17] Id., 221. Thus, neither *Stoddard* nor *Piorkowski* provides any support for the defendant's contention that article first, § 8, required the trial court to canvass him upon learning of Mirsky's potential conflict of interest. We, therefore, are unpersuaded by the defendant's analysis that he is entitled, in the context of the present case, to greater protection under the state constitution than he is under the federal constitution.[18]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[17] In support of his state constitutional claim, the defendant relies on our statement in *Piorkowski* that "we always have recognized that the right to counsel is a *personal* right." (Emphasis added.) *State v. Piorkowski*, supra, 243 Conn. 217, citing *State v. Stoddard*, supra, 206 Conn. 174. Although we agree that the right to counsel is personal in nature, that fact alone does not aid us in defining the *scope* of that right, which is crucial to the disposition of the defendant's claim. Consequently, the fact that the right to counsel is a personal right provides no support for the defendant's state constitutional claim.

[18] Although we conclude that the federal and state constitutions did not require the trial court to take any further action under the facts of the present case, we nevertheless believe that when defense counsel previously has represented a state's witness, as in the present case, the better practice is for the trial court to bring that fact to the defendant's attention. By informing the defendant of a possible conflict, the trial court will allow the defendant to express any concerns that he or she may have about counsel's continued participation in the case in light of the potential for divided loyalty on the part of counsel.