******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* BROCK DAVIS
## (SC 20335)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of the crime of murder in connection with the stabbing death of
the victim, the defendant appealed to this court, claiming, inter alia,
that the trial court had violated his sixth amendment right to the effective
assistance of counsel by denying his written motion to dismiss defense
counsel without adequately inquiring into certain grounds for his motion
and without conducting any inquiry into defense counsel's alleged con-
flict of interest. During a pretrial hearing, the defendant informed the
trial court that he no longer wanted to be represented by defense counsel.
The court ruled that there was no basis to dismiss defense counsel but
that the defendant could file a written motion to dismiss counsel and
provide reasons why counsel should be dismissed. Thereafter, the defen-
dant filed his written motion to dismiss counsel, in which he asserted
four grounds for the dismissal, including that a conflict of interest had
arisen. Following a hearing, the court denied the defendant's motion
without inquiring into defense counsel's alleged conflict of interest. Two
years later, at the defendant's sentencing hearing, the sentencing court
asked the defendant if he wanted to address the court. In response, the
defendant again raised the issue of defense counsel's alleged conflict
of interest, stating that counsel was also representing the victim's son.
The court proceeded to sentence the defendant without inquiring into
the alleged conflict of interest. On appeal from the judgment of convic-
tion, *held*:

1. Contrary to the defendant's claim, the trial court adequately inquired into
   the grounds asserted by the defendant in support of his written motion
   to dismiss defense counsel, other than the alleged conflict of interest;
   the defendant's claims that defense counsel did not diligently provide
   him with copies of the state's discovery materials or investigate informa-
   tion he had provided to her, that she allowed her investigator to advise
   him to plead guilty, and that she violated unspecified professional and
   ethical standards were not substantial complaints, and, therefore, they
   did not warrant further inquiry by the court, much less the dismissal
   of defense counsel.

2. The defendant having clearly brought to the attention of both the court
   presiding over the pretrial hearing and the sentecning court the pos-
   siblilty of defense counsel's conflict of interest, both courts had an
   affirmative duty to conduct further inquiry into the alleged conflict
   of interest by investigating the surrounding facts and questioning the
   defendant and defense counsel to determine whether counsel had an
   actual conflict of interest and whether that conflict had adversly affected
   her representation of the defendant; moreover, because both courts
   failed to conduct such an inquiry, this court could not determine, on
   the basis of the record before it, whether the defendant's allegation of
   a conflict of interest had any merit, and, accordingly, this court remanded
   the case for further proceedings to determine whether defense counsel
   had an actual conflict of interest that adversely affected her performance.

Argued November 24, 2020—officially released March 26, 2021*

*Procedural History*

Substitute information charging the defendant with
the crime of murder, brought to the Superior Court in
the judicial district of Hartford, where the court, *Dewey,
J.*, denied the defendant's motion to dismiss counsel;
thereafter, the case was tried to the jury before *Gold,
J.*; verdict and judgment of guilty, from which the defen-
dant appealed to this court. *Further proceedings*.

*Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *John F. Fahey*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. Following a jury trial, the defendant, Brock Davis, was convicted of one count of murder in violation of General Statutes § 53a-54a. The trial court, *Gold, J.*, rendered judgment in accordance with the jury's verdict and sentenced the defendant to fifty years of imprisonment. On appeal,[1] the defendant claims that the trial court violated his right to the effective assistance of counsel as guaranteed by the sixth amendment to the United States constitution by (1) denying his motions to dismiss defense counsel, Kirstin B. Coffin, without first adequately inquiring into certain bases for his motions, namely, that defense counsel did not diligently provide him with copies of the state's discovery materials or investigate information he had provided to her; that, during a meeting with her investigator and the defendant, she allowed her investigator to recommend that he plead guilty; and that she violated unspecified professional and ethical legal standards; and (2) failing to conduct any inquiry into defense counsel's alleged conflict of interest.[2] We disagree that the trial court inadequately inquired into the bases for the defendant's motions to dismiss defense counsel. We agree, however, that the trial court improperly failed to inquire into defense counsel's alleged conflict of interest, and, accordingly, we remand the case to the trial court for further proceedings in accordance with this opinion.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our analysis of the defendant's claims. On the morning of December 9, 2015, the defendant stabbed the victim, Joseph Lindsey, multiple times at the corner of Albany Avenue and Baltimore Street in Hartford, where the two men had been "hanging out," talking, and drinking with a third man, Jamar Cheatem, the victim's friend. Following the stabbing, Cheatem transported the victim to a hospital, where he was pronounced dead. The defendant was subsequently charged with the victim's murder. Following the defendant's arrest, Coffin was assigned to represent him.

On March 29, 2017, the trial court, *Dewey, J.*, conducted a pretrial hearing at which the defendant rejected the state's offer of a plea deal. During the hearing, the defendant informed Judge Dewey that he no longer wished to be represented by defense counsel due to her failure to investigate certain information he had provided her and to give him a copy of the state's discovery materials in a timely manner. The defendant also complained that defense counsel's investigator had encouraged him to plead guilty and that, "[f]rom the beginning," defense counsel had "made mistakes and alluded to the fact that [he] was guilty." Judge Dewey responded: "Well, it's your decision, obviously. . . . You have an experienced attorney and the fact that you don't like the investigation she's doing is not a ground

. . . for [dismissing] her . . . . [S]he has been your strongest advocate in all of the pretrials, and I see no basis for her to be withdrawn. File a written motion and give more of [a] reason that complies with the Practice Book and the constitution. But, at the present time, she is your attorney. You do have a right to secure an attorney of your own if you wish. You have a right to represent yourself if you are competent. You also have a right to have [defense counsel] represent you."

On May 24, 2017, as Judge Dewey had suggested, the defendant filed a written motion to dismiss defense counsel in which he asserted four reasons why counsel should be dismissed: (1) she failed to meet professional and ethical standards established by the Connecticut Bar Association and the American Bar Association, (2) she "refused to allow [him] to view any items that would enable [him] to come to an intelligent and informed decision as to where [his] best interest[s] [lie] and . . . to aid in his own defense," (3) she failed to investigate certain information he had provided to her, and (4) "[a] conflict of interest has arisen." On June 13, 2017, Judge Dewey conducted a hearing on the defendant's motion at which the defendant reiterated his prior complaint that defense counsel allowed her private investigator to advise him to accept the state's plea deal, which made him "feel uncomfortable and [distrustful] that [the investigator] would actually put forth his best effort." The defendant also renewed his complaint concerning the amount of time it took for him to receive a copy of the state's discovery materials.[3] When the defendant finished speaking, Judge Dewey informed him that he had given her no reason to dismiss defense counsel, stating: "You don't like what's happening, but you haven't given me a reason to dismiss her." The defendant responded by stating that "it took some time for . . . information to be investigated as well," that he did not think defense counsel was "being honest" with him and that "it took . . . a year to get [the discovery materials]." Judge Dewey responded that investigations "take time . . . to do . . . properly," that defense counsel "has a reputation for honesty," and that "[t]he fact it took a year [to receive the requested discovery materials] is not a basis for dismissing counsel." She then denied the motion to dismiss defense counsel. During the hearing, the defendant did not discuss the conflict of interest claim, which he cited in his May 24, 2017 written motion, as an additional ground to dismiss defense counsel. At no time did Judge Dewey inquire into the defendant's claim concerning defense counsel's alleged conflict of interest. Nor did Judge Dewey ascertain whether or not the defendant had finished arguing each of the bases in his motion to dismiss defense counsel before Judge Dewey denied the motion and ended the hearing.[4]

Two years later, at the defendant's sentencing hearing, when asked by the trial court, *Gold, J.*, whether he

wished to address the court, the defendant once again raised the issue of defense counsel's alleged conflict of interest. Specifically, he stated that, on two prior occasions, he had attempted to dismiss defense counsel because he did not have faith in her abilities and because she was "representing the son of [the victim]." When the defendant finished speaking, Judge Gold asked defense counsel if there was "anything else" she wished to say, and she indicated that there was not. Judge Gold then addressed the defendant, stating in relevant part: "[T]he first words that you say when you're given an opportunity to speak is to say . . . I tried to dismiss my lawyer. Those are the first words that you . . . wanted to say at your sentencing after hearing these appeals from [the victim's] family. . . . I just don't think that that . . . puts you in the best light. You're free to say whatever you wish to say at your sentencing, and you did. But frankly, I would have thought that you would have chosen something other than a complaint about your lawyer when you had the chance, after three and [one-half] years, to first express your feelings to this family." Judge Gold then sentenced the defendant to fifty years of imprisonment. At no time did Judge Gold inquire into the defendant's claim that defense counsel had a conflict of interest because she also was representing the victim's son.

On appeal, the defendant claims that the trial court violated his constitutional right to the effective assistance of counsel by (1) inadequately inquiring into some of the bases for his pretrial motions to dismiss defense counsel, and (2) failing to inquire at all into defense counsel's possible conflict of interest.[5] The defendant's claims implicate separate, yet similar, duties of the trial court to inquire into the relationship between the defendant and defense counsel when circumstances warrant such an inquiry. For the reasons set forth hereinafter, we conclude that the trial court conducted an adequate inquiry into the defendant's complaints that defense counsel did not diligently provide him with copies of the state's discovery materials or investigate information he had provided to her, that she allowed her investigator to advise him to plead guilty, and that she violated unspecified professional and ethical legal standards. We further conclude, however, that both trial judges improperly failed to inquire into the existence of a possible conflict of interest when the matter was brought to their attention.[6]

I

We begin with the defendant's claim that Judge Dewey inadequately inquired into the bases for his oral and written motions to dismiss defense counsel. Specifically, the defendant argues that, in both motions, he asserted a "seemingly substantial complaint," which required Judge Dewey to "inquire into the reasons for [his] dissatisfaction." (Internal quotation marks omit-

ted.) The defendant argues that a sufficient inquiry required Judge Dewey to engage him in more than a cursory exchange regarding his complaints and to ask defense counsel about those complaints, which she failed to do.

The state responds that Judge Dewey properly exercised her discretion in declining to conduct an extensive inquiry into the defendant's motions to dismiss defense counsel. The state contends that, distilled to their essence, the defendant's complaints about defense counsel concerned "the amount of time it had taken her to conduct her investigation and to provide him with requested materials, along with vague and unsubstantiated feelings or beliefs that counsel was not doing enough or being honest." The state argues that, because those complaints "were made known to [Judge Dewey], adequately explored, and demonstrably insufficient to [justify defense counsel's dismissal] . . . no further inquiry by [Judge Dewey] was required." We agree with the state.

The following legal principles guide our analysis of this claim. It is well established that "[a] defendant is not entitled to the appointment of a different public defender to represent him without a valid and sufficient reason. . . . Nor can a defendant compel the state to engage counsel of his own choice by arbitrarily refusing the services of a qualified public defender." (Citations omitted.) *State* v. *Gethers*, 193 Conn. 526, 543, 480 A.3d 435 (1984); see also *State* v. *Arroyo*, 284 Conn. 597, 645, 935 A.2d 975 (2007) ("[a]lthough the constitution guarantees a defendant counsel that is effective, it does not guarantee counsel whom a defendant will like"). "When reviewing the adequacy of a trial court's inquiries into a defendant's request for new counsel, an appellate court may reverse the trial court only for an abuse of discretion. . . . [Of course, a] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . . The extent of that inquiry, however, lies within the discretion of the trial court. . . . When a defendant's assertions fall short of a seemingly substantial complaint, we have held that the trial court need not inquire into the reasons underlying the defendant's dissatisfaction with his attorney." (Citations omitted; internal quotation marks omitted.) *State* v. *Simpson*, 329 Conn. 820, 842–43, 189 A.3d 1215 (2018). We have held that any irreconcilable conflict that might handicap the defense is a sufficient reason to warrant the removal of counsel and the appointment of new counsel. See *State* v. *Gethers*, supra, 543. "[I]n some circumstances a complete breakdown in communication between [the defendant] and counsel [also] may require the appointment of new counsel . . . ." (Citation omitted.) *State* v. *Robinson*, 227 Conn. 711, 727, 631 A.2d 288 (1993).

In the present case, it is readily apparent that Judge

Dewey properly exercised her discretion in denying the defendant's motions to dismiss defense counsel because the defendant's complaints against defense counsel were not substantial. As previously indicated, apart from defense counsel's alleged conflict of interest, the defendant raised three principal complaints that he claimed justified counsel's dismissal: during a meeting with the defendant, she allowed her investigator, who was also present, to recommend that he plead guilty, she did not diligently provide him with copies of the state's discovery materials or investigate information he had provided to her, and she violated unspecified professional and ethical legal standards.[7] We previously have held that a defendant's disagreement with defense counsel regarding the strength of the state's case is not a valid reason to dismiss counsel. See *State* v. *Simpson*, supra, 329 Conn. 843 (concluding that defendant's complaint that he "felt pressured to take the [state's] plea [deal] because [he] was told [by defense counsel that he] had no chance of winning [at] trial" was insubstantial because that advice "amount[ed] to an experienced lawyer's analysis of the evidence available to [the defendant] as against the state's evidence" (internal quotation marks omitted)); see also, e.g., *United States* v. *Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) ("defense counsel's blunt rendering of an honest but negative assessment of [a defendant's] chances at trial, combined with advice to enter the plea, [does not] constitute . . . coercion"); *United States* v. *Moree*, 220 F.3d 65, 72 (2d Cir. 2000) ("[t]hat the attorney advised [the defendant] to take the [plea] offer and warned him that his failure to do so would lead to a thirty year sentence merely asserts that the lawyer gave professional advice as to what the consequences of his choice might be").

Likewise, the defendant's complaint that defense counsel took too long to provide him with a copy of the state's discovery materials and to investigate information he had provided her was also insufficient to justify counsel's dismissal. Indeed, the record reveals that, by the time of the June 13, 2017 hearing on the defendant's written motion to dismiss counsel, which took place nearly two years before trial, the defendant not only had received a copy of the requested discovery materials, but had informed Judge Dewey that the requested investigation also was completed. As for the defendant's complaint that defense counsel violated professional and ethical standards, Judge Dewey had no duty of inquiry with respect to this allegation given that the defendant failed to specify what, or how, any such standards were violated. Vague assertions of this kind are simply not the type of complaints that trigger a trial court's duty to inquire into the relationship between a defendant and defense counsel, much less do they warrant the dismissal of counsel. Accordingly, we conclude that Judge Dewey adequately inquired into the complaints underlying the defendant's motions to

dismiss defense counsel.

## II

The defendant next claims that the trial court, on two different occasions, inadequately inquired into defense counsel's possible conflict of interest when the defendant raised the issue. As previously indicated, in his pretrial, written motion to dismiss defense counsel, argued before Judge Dewey, the defendant alleged that "[a] conflict of interest has arisen." Two years later, during his sentencing hearing, the defendant informed Judge Gold that he previously had attempted to dismiss defense counsel because, inter alia, she was "representing the son of [the victim]." On both occasions, neither Judge Dewey nor Judge Gold asked the defendant or defense counsel any questions about the alleged conflicts of interest raised before them. The state does not dispute that Judge Dewey and Judge Gold each had a duty to inquire into defense counsel's possible conflict of interest but, rather, argues that both judges discharged their respective duties of inquiry. We disagree.

It is axiomatic that a criminal defendant's sixth amendment right to the effective assistance of counsel[8] includes the right to counsel that is free from conflicts of interest. *State* v. *Vega*, 259 Conn. 374, 386, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). It is a "fundamental principle . . . that an attorney owes an overarching duty of undivided loyalty to his [or her] client. At the core of the sixth amendment guarantee of effective assistance of counsel is loyalty, perhaps the most basic of counsel's duties. . . . Loyalty of a lawyer to his [or her] client's cause is the sine qua non of the [s]ixth [a]mendment's guarantee that an accused is entitled to effective assistance of counsel. . . . That guarantee affords a defendant the right to counsel's undivided loyalty." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Phillips* v. *Warden*, 220 Conn. 112, 136–37, 595 A.2d 1356 (1991).

In cases involving potential conflicts of interest, this court has held that "[t]here are two circumstances under which a trial court has a duty to inquire . . . (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . ." (Internal quotation marks omitted.) *State* v. *Vega*, supra, 259 Conn. 388. "To safeguard a criminal defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial judge in a timely manner." (Internal quotation marks omitted.) Id., 389; see *State* v. *Crespo*, 246 Conn. 665, 698 n.29, 718 A.2d 925 (1998) (defendant's objection to possible conflict of interest "gives rise to an absolute duty to inquire"), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999); *State* v.

*Martin*, 201 Conn. 74, 80, 513 A.2d 116 (1986) (concluding that duty to inquire arises whenever trial court knows or has reason to know of possible conflict); see also *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994) ("[w]hen a [trial] court is sufficiently apprised of even the possibility of a conflict of interest, the court . . . has an 'inquiry' obligation"). In such circumstances, "[t]he court must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Levy*, supra, 153. We review the defendant's claim that the trial court failed to inquire into a possible conflict of interest as a question of law, and, as such, it is subject to plenary review. See, e.g., *State* v. *Parrott*, 262 Conn. 276, 286, 811 A.2d 705 (2003).

Applying the foregoing principles to the present case, we conclude that it is apparent both Judge Dewey and Judge Gold had a duty to inquire into the defendant's claim, first raised nearly two years before trial, that defense counsel had a conflict of interest. The defendant's allegation in his motion to dismiss defense counsel that "[a] conflict of interest has arisen" constituted not only "a timely conflict objection at trial"; (internal quotation marks omitted) *State* v. *Vega*, supra, 259 Conn. 388; but an unmistakably clear one such that, under our case law, Judge Dewey minimally was required to inquire as to the nature of the alleged conflict. See *State* v. *Martin*, supra, 201 Conn. 83 (trial court improperly denied defense counsel's motion to withdraw without "*any* inquiry in response to an explicit representation of a possible conflict of interest" (emphasis in original)); see also *State* v. *Parrott*, supra, 262 Conn. 288–89 (concluding that, in response to potential conflict of interest caused by defense counsel's choosing to sit apart from defendant at trial for "personal safety" reasons, trial court conducted adequate inquiry in which it determined that defendant and counsel could communicate during voir dire, defendant wanted counsel to continue to represent him, and counsel felt he " 'absolutely' " could provide adequate representation); *State* v. *Vega*, supra, 390–91 (in response to defendant's allegation that his filing grievance against defense counsel created conflict, trial court adequately inquired and determined that complaints "were vague and generally amounted to disagreements with [counsel's] tactical or strategic decisions, and his concern that [they] had not had the opportunity to meet . . . more frequently"); *State* v. *Kukucka*, 181 Conn. App. 329, 342, 186 A.3d 1171 (because defendant "did not raise a timely conflict of interest objection before the trial court," duty of inquiry analysis was limited to whether trial court knew or reasonably should have known that conflict potentially existed), cert. denied, 329 Conn. 905, 184 A.3d 1216 (2018).

Likewise, when the defendant complained to Judge

Gold that defense counsel was "representing the son of [the victim]," Judge Gold had a duty to inquire regarding the facts surrounding that claim to determine whether counsel was, in fact, representing the victim's son and, if so, whether it adversely had affected her representation of the defendant.[9] See *State* v. *Burns*, Docket No. A-4696-03T4, 2006 WL 3093137, *6 (N.J. Super. App. Div. November 2, 2006) (deeming defense counsel's prior representation of victim's son "potential conflict" that "should have been brought to the court's attention prior to trial and resolved on the record" in murder trial), cert. denied, 191 N.J. 317, 923 A.2d 231 (2007).

The state argues that Judge Dewey satisfied her duty of inquiry by holding a hearing on the defendant's motion to dismiss defense counsel at which the defendant was allowed to argue in support of the motion. The state contends that, because the defendant did not mention the alleged conflict during that hearing, "Judge Dewey might reasonably have believed that the alleged 'conflict of interest' was comprised solely of the defendant's [other] articulated complaints regarding [defense] counsel's performance." This argument is unavailing because, as we repeatedly have stated, the trial court's duty to explore the possibility of conflict when such conflict is brought to its attention is an *affirmative* duty that can be discharged only by the trial court's questioning the defendant and defense counsel about the claimed conflict. See *State* v. *Vega*, supra, 259 Conn. 389; *State* v. *Martin*, supra, 201 Conn. 82.[10]

For the same reason, we find no merit in the state's contention that Judge Gold fulfilled his duty of inquiry merely by asking defense counsel, prior to imposing sentence on the defendant, "if she had anything further to say." According to the state, because defense counsel had "an independent ethical obligation to avoid or seek agreement regarding conflicting representations, and to advise the court promptly if a conflict of interest had existed or arisen during the trial," and because defense counsel declined the opportunity to address the defendant's allegation, Judge Gold "reasonably could have assumed that no conflict of interest existed or that the defendant had agreed to [waive] it." Contrary to the state's assertions, if an attorney's ethical duty to avoid conflicts and to disclose them whenever they arise was sufficient to protect a defendant's right to be represented by counsel free of any such conflicts, the law would not have seen fit to impose on the trial court an independent duty of inquiry.

We recognize that, in the absence of any reason to the contrary, the trial court may rely on defense counsel's representation that there is no conflict, and it has no obligation to conduct any further inquiry into the subject. See *State* v. *Cator*, 256 Conn. 785, 795, 781 A.2d 285 (2001). In the present case, however, defense coun-

sel did not assert that there was no conflict. See *State* v. *Lopez*, 80 Conn. App. 386, 393–94, 835 A.2d 126 (2003) (trial court had affirmative duty to inquire about defense counsel's possible conflict of interest when counsel did not assert that there was no conflict or that her representation of defendant would not be compromised at trial), aff'd, 271 Conn. 724, 859 A.2d 898 (2004); see also *State* v. *Martin*, supra, 201 Conn. 82 (in discharging duty of inquiry, "trial court must be able, and be freely permitted, to rely upon [defense] counsel's representation that the possibility of such a conflict does or does not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [counsel] as an officer of the court. . . . The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case." (Citations omitted; internal quotation marks omitted.)). What the trial court is not permitted to do, however, is simply to infer from defense counsel's silence, after the possibility of a conflict has been raised in open court, that no such conflict exists. Cf. *United States* v. *Crespo de Llano*, 838 F.2d 1006, 1012 (9th Cir. 1987) ("*where neither [the] defendant nor his lawyers objected to multiple representation,* [the] trial court was entitled to assume that they had determined that no conflict existed or that [the] defendant had knowingly accepted the risk of conflict" (emphasis added)), citing *Cuyler* v. *Sullivan*, 446 U.S. 335, 346–48, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

Because Judge Dewey and Judge Gold failed to inquire into defense counsel's alleged conflict of interest, we cannot determine, on the basis of the record before us, whether that allegation has any merit. In such circumstances, we must remand the case to the trial court for a determination of whether defense counsel did, in fact, have an actual conflict of interest that adversely affected her representation of the defendant.[11] Compare *Wood* v. *Georgia*, 450 U.S. 261, 272–73, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) (remanding case to trial court after concluding that it failed to inquire into "sufficiently apparent" conflict of interest, depriving United States Supreme Court of record necessary to determine "whether [defense] counsel was influenced in his basic strategic decisions by the [alleged conflict of interest]"), with *Mickens* v. *Taylor*, 535 U.S. 162, 165, 174, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002) (upholding denial of habeas relief, following evidentiary hearing on claim that trial court failed to inquire into defense counsel's potential conflict of interest because, even if trial court failed to inquire, petitioner was required, and had failed, to prove actual conflict and adverse effect during evidentiary hearing); see also *Morgan* v. *Commissioner of Correction*, 87 Conn. App. 126, 142–43, 866 A.2d 649 (2005) (remanding case to habeas court after it inadequately inquired into apparent conflict of interest because Appellate Court had "no evidence

before [it] in the record that reveal[ed] whether the nature of the grievances constituted an actual conflict of interest"); *State* v. *Mims*, 180 N.C. App. 403, 413, 637 S.E.2d 244 (2006) (remanding case to trial court after it failed to inquire into possible conflict of interest because, "unlike in *Mickens*, an evidentiary hearing ha[d] not been held," and, thus, court was unable to determine if defendant's right to effective assistance of counsel had been denied); *State* v. *Gillard*, 64 Ohio St. 3d 304, 312, 595 N.E.2d 878 (1992) (remanding case to trial court after it inadequately inquired into possible conflict of interest because court "[could] not be sure that an actual conflict of interest existed").

On remand, the trial court is instructed to conduct a hearing at which the defendant shall have the burden of establishing "(1) that [defense] counsel actively represented conflicting interests[12] and (2) that an actual conflict of interest adversely affected his [counsel's] performance."[13] (Footnote added; internal quotation marks omitted.) *State* v. *Parrott*, supra, 262 Conn. 287; see also *Cuyler* v. *Sullivan*, supra, 446 U.S. 348. As we previously have explained, an attorney may be subject to conflicting interests when "interests or factors personal to him [or her] . . . are inconsistent, diverse or otherwise discordant with [the interests] of his [or her] client . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Crespo*, supra, 246 Conn. 690. To prove adverse effect, a defendant must "demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." (Internal quotation marks omitted.) *State* v. *Vega*, supra, 259 Conn. 387.

Following the hearing on remand, the trial court is directed to make its findings of fact and conclusions of law in writing, which shall promptly be filed with the Office of the Appellate Clerk for our review. See, e.g., *State* v. *Pollitt*, 199 Conn. 399, 416–17, 508 A.2d 1 (1986) (remanding case to trial court with order to conduct evidentiary hearing on suppression of evidence claim and instructing court, after making "its findings of fact and conclusions of law," to "promptly file such findings and conclusions with the clerk of this court for our review"); see also Practice Book § 60-2 ("[this] court may, on its own motion or upon motion of any party . . . (8) remand any pending matter to the trial court for the resolution of factual issues where necessary"). At that time, depending on the trial court's findings, this court will determine whether it is necessary to reach the defendant's remaining claim on appeal that the trial court improperly admitted into evidence testimony from lay witnesses identifying him in a surveillance video recording.

The case is remanded for further proceedings in

accordance with this opinion.

In this opinion the other justices concurred.

* March 26, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3).

[2] The defendant does not assert an inadequate inquiry claim under article first, § 8, of the Connecticut constitution. The defendant also claims that the trial court improperly admitted into evidence testimony from three lay witnesses identifying him in a surveillance video recording in violation of *State* v. *Finan*, 275 Conn. 60, 881 A.2d 187 (2005), and § 7-3 (a) of the Connecticut Code of Evidence. Because we agree with the defendant that the trial court was required but failed to inquire into a possible conflict of interest and remand the case to the trial court to conduct such an inquiry, we conclude that it is premature to address the defendant's remaining claim at this time.

[3] The following exchange occurred between Judge Dewey, defense counsel, and the defendant concerning the discovery materials:

"The Defendant: Also . . . when [defense counsel] was given the motion of discovery . . . I told her I would like a copy. She said she wouldn't be able to give me a copy of the motion of discovery at that time. And then, after I made my complaint, I received it two weeks later.

"[Judge Dewey]: You gave him copies of discovery?

"The Defendant: It took me a year to receive it, Your Honor.

"[Judge Dewey]: Counsel?

"[Defense Counsel]: He requested a copy of his file, Your Honor.

"[Judge Dewey]: Oh, his file?

"[Defense Counsel]: Yes.

"The Defendant: The motion of discovery, I asked for a copy.

"[Judge Dewey]: But not the actual discovery in this case, I hope.

"[Defense Counsel]: Yes, his file, the police reports. . . .

"[Judge Dewey]: You weren't entitled to discovery. Police reports aren't given to prisoners, sir. It might have taken a year [for you to receive a copy of discovery]. You shouldn't have gotten it at all.

"The Defendant: Shouldn't have got what?

"[Judge Dewey]: You should not get copies. Police reports are not given to people who are incarcerated. Police reports aren't given, witness statements aren't given. They are not given to incarcerated individuals. So, the fact that you even got it, you should be thankful your attorney gave it to you. You're not entitled to it, sir.

"The Defendant: Well, she told me it would have to be redacted, Your Honor. . . .

"[Judge Dewey]: Oh, if she did redact it, that was fine."

[4] The June 13, 2017 hearing ended in the following manner:

"[Judge Dewey]: Sir, excuse me?

"The Defendant: If I felt she's not being honest with me, I can't really—

"[Judge Dewey]: Sir, if this attorney is anything, she has a reputation for honesty. There has never been a doubt as to that and her credibility. Perhaps you feel uncomfortable with her, but, based on your motion, what you're indicating—you say that she's not meeting the Connecticut Bar [Association] standards. You've given me no indication of that. You say she refused to allow you to review items. Well, because she's under court orders not to disclose certain items, except redacted items. You say she's failed to investigate information. There's no indication of that.

"The Defendant: Redacted items, it took me a year to get redacted items?

"[Judge Dewey]: The fact [that] it took a year is not a basis for dismissing counsel. Your motion is denied. Thank you. Thank you, counsel.

"[Defense Counsel]: Thank you, Your Honor.

"([The defendant] returns to lockup)."

[5] The defendant's first claim pertains to Judge Dewey, whereas his second claim pertains to both Judge Dewey and Judge Gold.

[6] In his written motion to dismiss defense counsel, the defendant cited an alleged conflict of interest as the fourth basis for dismissing defense counsel. Because a different legal standard governs the trial court's duty to inquire into possible conflicts of interest than its duty to inquire into other aspects of the relationship between a defendant and defense counsel, we examine the trial court's inquiry into the alleged conflict of interest separately from that court's inquiry into the other complaints raised in the defendant's motion to dismiss defense counsel.

[7] We conclude that Judge Dewey properly exercised her discretion in response to the defendant's March 29, 2017 oral motion to dismiss defense counsel by instructing the defendant to file a written motion providing further support for the dismissal and, after the defendant filed that motion, by conducting the June 13, 2017 hearing on it. We note that, except for the alleged conflict of interest, which was stated in the defendant's written motion but not discussed during the June 13, 2017 hearing, all of the complaints raised by the defendant in his oral motion were either incorporated into his written motion or shared with Judge Dewey during that hearing. Accordingly, we consider only the adequacy of Judge Dewey's inquiry into the defendant's written motion during that hearing.

[8] The sixth amendment right to effective assistance of counsel is made applicable to the states through the due process clause to the United States constitution. See, e.g., *Evitts* v. *Lucey*, 469 U.S. 387, 392, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).

[9] We understand that complaints from defendants about defense counsel are not infrequent and sometimes have no real basis. Nevertheless, this cannot excuse the well established duty to inquire. We want to emphasize that the trial court's duty to inquire is not an onerous one. To the contrary, when there has been a timely conflict objection or the court knows or has reason to know of a potential conflict, the duty of inquiry is limited to determining whether a conflict actually exists, which, in the vast majority of cases, the court can accomplish by asking a few pointed questions. "If the court is satisfied at the inquiry stage that there is no actual conflict or potential for one to develop, its duty ceases." *United States* v. *Cain*, 671 F.3d 271, 293 (2d Cir.), cert. denied sub nom. *Soha* v. *United States*, 566 U.S. 928, 132 S. Ct. 1872, 182 L. Ed. 2d 655 (2012), and cert. denied, 571 U.S. 942, 134 S. Ct. 56, 187 L. Ed. 2d 257 (2013); see also *State* v. *Drakeford*, 261 Conn. 420, 427–28, 802 A.2d 844 (2002) ("[in the absence of] any reason to the contrary, the trial court may rely on [defense counsel's] representation that there is no conflict, and it has no obligation to conduct any further inquiry into the subject" (internal quotation marks omitted)).

We can perceive no reason, moreover, why the court's inquiry need improperly reveal confidential matters between attorney and client. See *Holloway* v. *Arkansas*, 435 U.S. 475, 487, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978) (noting that trial court can explore "the adequacy of the basis of defense counsel's representations regarding a conflict of [interest] without improperly requiring disclosure of the confidential communications of the client"). Trial courts may take appropriate steps to avoid the potential disclosure of such confidential information, including, if necessary, conducting an in camera inquiry with the defendant and defense counsel that is later summarized on the record. See *United States* v. *Gregoire*, 628 Fed. Appx. 496, 497 (9th Cir. 2015) (remanding case in which District Court improperly failed to inquire into defendant's alleged irreconcilable conflict with appointed counsel to "conduct an adequate inquiry, including an in camera hearing if necessary, to determine the extent of the [pretrial] conflict between [the defendant] and counsel"); *People* v. *Winbush*, 205 Cal. App. 3d 987, 991, 252 Cal. Rptr. 722 (1988) ("[o]nce the request for new counsel is made, the trial court's first duty is to fully explore with [the] defendant, in open court or during an in camera session without the presence of the prosecutor, [the] defendant's reasons for desiring new counsel"); *State* v. *Yelton*, 87 N.C. App. 554, 557, 361 S.E.2d 753 (1987) (observing that "full and searching inquiry to determine whether an actual conflict of interest exists . . . may include *in camera* proceedings or discussions between the trial judge and [the] defendants" (emphasis in original)); *State* v. *Vicuna*, 119 Wn. App. 26, 32–33, 79 P.3d 1 (2003) (suggesting, in response to state's "argument that requiring more rigorous inquiry regarding an alleged conflict could jeopardize attorney-client privilege," that "court may conduct an in camera review with a sealed record").

[10] Although Judge Dewey invited a written motion from the defendant listing his reasons to dismiss defense counsel, she ended the June 13, 2017 hearing without asking him any questions about defense counsel's conflict of interest, which was plainly alleged in his written motion to dismiss. Accordingly, we disagree with the state that Judge Dewey satisfied her duty of inquiry during the June 13, 2017 hearing to address defense counsel's alleged conflict of interest.

[11] Citing *Holloway* v. *Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), the defendant argues that the trial court's failure to inquire into defense counsel's alleged conflict of interest entitles him to a new trial. The defendant's reliance on *Holloway* is misplaced because that case involved

the trial court's failure to inquire into whether an attorney's representation of three murder defendants at the same trial created a conflict of interest for the attorney. Id., 478–80. In reversing the convictions of the defendants, the United States Supreme Court did not require the defendants to show prejudice but, rather, assumed that the representation was inherently prejudicial. Id., 489–91. The court deemed joint representation inherently prejudicial because of what it "tends to prevent the attorney from doing" on behalf of each of his clients, and because a rule requiring a defendant to show prejudice would "not be susceptible of intelligent, evenhanded application," considering the potential for silence in the record as a result of "what the advocate finds himself compelled to *refrain* from doing . . . ." (Emphasis in original.) Id., 489–90. Subsequently, in *Mickens* v. *Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), a case involving a trial court's failure to inquire into a potential conflict of interest about which it knew or reasonably should have known; id., 164; the Supreme Court expressly limited *Holloway*'s rule of automatic reversal to cases in which "defense counsel [was] forced to represent codefendants over [counsel's] timely objection . . . ." Id., 168. In so doing, the court noted that "[the] [p]etitioner's proposed rule of automatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the . . . mandated inquiry, makes little policy sense." Id., 172. As Justice Kennedy observed in his concurring opinion in *Mickens*, "[t]he trial judge's failure to inquire into a suspected conflict is not the kind of error requiring a presumption of prejudice." Id., 176 (Kennedy, J., concurring). Indeed, automatic reversal in such cases is not only unwarranted but would be profoundly unfair to the state. In such cases, "[t]he constitutional question must turn on whether trial counsel had a conflict of interest that hampered the representation, not on whether the trial judge should have been more assiduous in taking prophylactic measures." Id., 179 (Kennedy, J., concurring).

[12] The record does not reveal whether the conflict alleged by the defendant before Judge Dewey is the same as the conflict he alleged before Judge Gold, which was that defense counsel was representing the son of the victim. To the extent that it is relevant, the trial court should consider on remand whether the defendant's alleged conflicts of interest before Judge Dewey and Judge Gold are the same and whether that has any impact on the defendant's ability to satisfy his burden on remand.

[13] "Prejudice may be presumed in some sixth amendment contexts, such as the actual or constructive denial of assistance of counsel altogether or various forms of state interference with counsel's assistance. . . . In the context . . . of counsel allegedly burdened by a conflict of interest . . . there is no presumption of prejudice per se. Prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that . . . conflict of interest adversely affected [counsel's] performance. . . . The Second Circuit Court of Appeals has honed this test further. Once a defendant has established that there is an actual conflict, he must show that a lapse of representation . . . resulted from the conflict. . . . To prove a lapse of representation, a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." (Citations omitted; internal quotation marks omitted.) *State* v. *Vega*, supra, 259 Conn. 387; see also *State* v. *Crespo*, supra, 246 Conn. 689 n.21 ("If an actual conflict of interest burdens the defendant's counsel, the defendant need not establish actual prejudice. . . . The defendant need only demonstrate that . . . counsel's performance was adversely affected by the conflict." (Citation omitted; internal quotation marks omitted.)).

_____